IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

REBECCA RICHISON,

        Plaintiff,

v.                                      CIVIL ACTION NO.   2:23-cv-00771

CO AARON CHAPMAN, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court are two Motions to Dismiss, one filed by Defendant Steve Caudill, [ECF No. 14], and the other filed by Defendant Joseph Wood, [ECF No. 34]. Plaintiff Rebecca Richison responded in opposition to both motions, [ECF Nos. 21, 37]. Because both motions raise the substantially similar arguments and relate to the same counts of the Complaint, I will dispose of them together. For the following reasons, both motions, [ECF Nos. 14, 37], are **GRANTED**.

I.    Background

This lawsuit arises out of multiple alleged uses of excessive force against Ms. Richison during her incarceration at North Central Regional Jail and Correctional Facility ("NCRJ"). [ECF No. 2, ¶ 1]. Ms. Richison brought a ten-count complaint alleging several constitutional violations, as well as claims of assault and battery, against the following Defendants: (1) five Correctional Officers ("COs"), employed at

NCRJ, namely, Defendants Aaron Chapman, Joel Hammer, Ashley Husk, Tiffany Neely, and Josie Hayman, *id.* ¶¶ 6–10; (2) Defendant Shannon Sams, a Captain employed at NCRJ, *id.* ¶ 11; (3) Defendant Steve Caudill, who is the Director of Security Services at the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), *id.* ¶ 4, and (4) Defendant Joseph Wood, who was the Superintendent of NCRJ during the relevant time period, *id.* ¶ 5. The allegations in this case, which the court accepts as true at the motion to dismiss stage, are highly concerning. However, as Defendants Joseph and Wood are named only in Counts I, II, and V of the Complaint under a theory of supervisory liability,[1] I will only give a brief summary of the allegations that relate specifically to these Counts.

### A. Facts

Ms. Richison was booked into NCRJ on February 9, 2023, and was subsequently moved into a unit with four other women. *Id.* ¶¶ 14–15. She claims that constitutional violations began on or about February 10, 2023, when it was discovered that one of the other women in her unit—who Ms. Richison did not know—snuck drugs into the jail. *Id.* ¶ 16. This prompted the COs to bring all the individuals back to the booking area. *Id.* While being escorted to booking in handcuffs, Defendant Ward began pushing Ms. Richison, who was pregnant at the time, to increase her walking speed. *Id.* ¶ 17. Ms. Richison explained to Defendant Ward that she had a high-risk pregnancy and could not walk fast, and in response, Defendant Ward

---

[1] Defendant Wood was originally named as a Defendant in Count VI—violations of the Eighth Amendment for physical conditions of confinement—but the parties stipulated to dismissal of that Count as to Defendant Wood only.

2

pushed her against a wall while Defendant Chapman sprayed her with oleoresin capsicum ("OC spray" or "pepper-spray"). *Id.* ¶¶ 18–20. She alleges that she was then placed in a non-contact room, but in the process of moving into the room, she was sprayed again with OC spray—this time in the face—by Defendant Hammer. *Id.* ¶¶ 23–28. She was then pushed against the door of the non-contact room by Defendant Husk and placed in handcuffs before being placed in a temporary holding cell. *Id.* ¶¶ 29–30.

Following the use of the pepper-spray, Ms. Richison was not decontaminated; rather she was "dry-celled"[2] with approximately three other women in booking for several days. *Id.* ¶¶ 49–50, 52. Ms. Richison alleges that during this time, the smell of the pepper-spray emanating from her hair was so overpowering, her cellmates had difficulty breathing and she was forced to remove her shirt and wrap it around her hair. *Id.* ¶¶ 52–53.

On or about February 13, 2023, after being taken to a medical unit due to excessive vomiting and severe dehydration, Defendants Neely and Hayman brought Ms. Richison into a bathroom for a strip search. *Id.* ¶¶ 60, 65. Ms. Richison alleges that while she was naked, Defendant Hayman pepper-sprayed on Ms. Richison without cause or provocation, and Defendant Neely subsequently slammed a pregnant Ms. Richison to the floor on her stomach, "causing [her] to urinate on herself." *Id.* ¶¶ 66–67.

---

[2] To "dry-cell" an inmate means to place that inmate in an area to which water has been shut off. *Id.* at 8, n.2.

3

### B. Procedural History

Ms. Richison initiated this lawsuit on December 1, 2023, alleging six counts of Eighth Amendment violations by Defendants, as well as four counts of assault and battery. In Count I, Ms. Richison that her Eighth Amendment rights were violated when she was pepper-sprayed by Defendant Chapman while restrained with her hands behind her back. *Id.* ¶ 105. She then alleges that Defendants Caudill and Wood, explicitly or tacitly condoned Defendant Chapman's actions in their supervisory roles. *Id.* ¶ 106. In Count II, Ms. Richison alleges that her Eighth Amendment rights were violated by Defendant Hammer when he deployed pepper-spray in her face while stepping into the non-contact room. *Id.* ¶ 115. Again, she alleges supervisory liability against Defendants Caudill and Wood. *Id.* ¶ 116. Finally, in Count V, Ms. Richison alleges Eighth Amendment violations against Defendants Neely and Hayman when they pepper-sprayed her while she was naked for a strip search and slammed her to the floor on her pregnant stomach. *Id.* ¶ 146. In this count, Ms. Richison again alleges supervisory liability against Defendants Caudill and Wood. *Id.* ¶ 147.

Defendants Caudill and Wood have both filed motions to dismiss. *See* [ECF Nos. 14, 34]. Defendant Caudill asserts that Ms. Richison's Complaint alleges no facts to support the conclusion that "Defendant Caudill subjectively found any conduct at NCRJ to be excessive or unconstitutional or that he had any awareness that inmates were at substantial risk of harm." [ECF No. 15, at 3]. Defendant Wood likewise argues that he cannot be held liable under supervisory liability because Ms. Richison fails to allege any facts about specific unconstitutional "uses of force at NCRJ pre-dating the

4

February 10, 2023, events." [ECF No. 36, at 9]. Ms. Richison has responded in opposition to both motions, asserting that her pleadings have properly alleged actual, subjective awareness of unconstitutional conduct sufficient to support claims against Defendants Caudill and Wood. *See* [ECF Nos. 21, 37]. The matter is ripe for review.

## II. Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The

plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Courts, however, "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 268 (1986)).

### III. Discussion

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "After incarceration, only the 'unnecessary and wanton infliction of pain,' . . . constitutes cruel and unusual punishment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (cleaned up) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The prohibition of cruel and unusual punishment gives inmates a "right to be free from malicious or penologically unjustified infliction of pain and suffering." *Thompson v. Virginia*, 878 F.3d 89, 102 (4th Cir. 2017) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Pepper-spraying an inmate who is compliant and poses no physical threat without warning or justification violates this standard. *See Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021).

Ms. Richison brings these three Eight Amendment claims under 42 U.S.C. § 1983. The Supreme Court has held that anyone who—while acting under the color of state law—"deprives a person of any rights, privileges, or immunities secured by the Constitution and laws" may be held liable under § 1983. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal quotation marks omitted). It is well-established that multiple actors can be the cause of a single constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Although § 1983 liability may not be premised on a theory of *respondeat superior*, see *Glass v. McKnight*, No. 2:23-cv-00313, 2023 WL 6161046, at *3 (S.D. W. Va. Sept. 21, 2023), supervisory officials who are on notice that their subordinates are acting unlawfully may be held liable if they fail to intervene and prevent constitutional injuries. *id.*, or if their "supervisory indifference or tacit authorization of subordinates' misconduct [is] a causative factor in [those injuries]." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

> To succeed in a supervisory liability case, a plaintiff must demonstrate:
>
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799 (internal quotation marks omitted). To establish the first element, the plaintiff must show that "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and

7

unreasonable risk of constitutional injury to the plaintiff." *Id.* "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions." *Id.* (quoting *Slakan*, 737 F.2d at 373); see also *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).

### A. Defendant Caudill

Ms. Richison fails to sufficiently allege a claim for supervisory liability against Defendant Caudill. In Counts I, II, and V, Ms. Richison asserts that Defendant Caudill "while acting in a supervisory capacity, explicitly and/or tacitly condoned the unconstitutional actions of" Defendants Chapman, Hammer, Neely, and Hayman, respectively. [ECF No. 2, ¶¶ 106, 116, 147]. She simply states that Defendant Caudill "was aware, or should have been aware, of the regular pattern and practice of uses of excessive force" by the NCRJ COs, which includes Defendants Chapman, Hammer, Neely, and Hayman. *Id.* ¶ 95. She further alleges that Defendant Caudill took no steps to prevent the use of excessive force, which in turn allowed the COs to continue using excessive force. *Id.* ¶¶ 96–97. She asserts that this amounts to deliberate indifference. *Id.* ¶ 98. But this "formulaic recitation" of the elements of supervisory liability, without more, is insufficient to survive a motion to dismiss. *See Twombly*, 599 U.S. at 555. It is not enough to allege that Defendants Chapman, Hammer, Hayman, and Neely have "been involved in numerous uses of excessive force against incarcerated individuals at NCRJ over the past 18 months." *See* [ECF No. 2, ¶¶ 84–88]. Because excessive force "can occur any number of ways," Ms. Richison needed to

"allege that there was a widespread practice of the *particular* unconstitutional conduct complained of." *Shields v. Tibbs*, 2:23-cv-00491, 2024 WL 1804388, at *3 (S.D. W. Va. Apr. 25, 2024) (emphasis added). She did not do that here. As such, Counts I, II, and V must be dismissed as they relate to Defendant Caudill.

### B. Defendant Wood

For these same reasons, Ms. Richison also fails to state a claim against Defendant Wood for supervisory liability. Defendant Wood was, during the relevant time period, the Superintendent of NCRJ. [ECF No. 2, ¶ 5]. In Counts I, II, and V, Ms. Richison repeats the same legal conclusion against Defendant Wood—that "while acting in a supervisory capacity, [he] explicitly and/or tacitly condoned the unconstitutional actions" of Defendants Chapman, Hammer, Hayman, and Neely. *Id.* ¶¶ 106, 116, 147. And again, Ms. Richison fails to plead any facts regarding other times the CO Defendants used this particular kind of excessive force, that Defendant Wood knew of instances of pepper-spraying inmates without justification at NCRJ, or that those instances—if they exist—happened prior to the events alleged here. As such, the claims against Defendant Wood for supervisory liability must be dismissed.

### IV. Venue

Finally, the court has concerns about whether the Southern District of West Virginia is the most appropriate venue for this case. As a general matter, cases arising under federal law "may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred;" or (3) any judicial district in which any defendant is subject to the court's personal jurisdiction if there is no other district. 28 U.S.C. § 1391(b)(1).

The federal venue statute allows a district court to "transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). This statute gives courts authority to transfer an action *sua sponte* upon consideration of certain factors, such as convenience of parties and witnesses, as well as whether transfer would be in the interest of justice. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure §§ 3844, 3847–48 (4th ed. 2023). It is proper, however, to first provide the parties with notice and an opportunity to be heard and present their views about the transfer. *See, e.g.*, *Nalls v. Coleman Low Fed. Inst.*, 440 F. App'x 704, 706 (11th Cir. 2011); *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. 2006); *Starnes v. McGuire*, 512 F.2d 918, 934 (D.C. Cir. 1974) ("[B]efore ordering transfer the judge should, at minimum, issue an order to show cause why the case should not be transferred, and thereby afford the parties an opportunity to state their reasons for believing that this forum is most convenient or that the proposed alternative forum is inconvenient or not within the ambit of § 1404(a)).

All of the alleged activities that form the basis of the Complaint occurred at North Central Regional Jail, which is located in the Northern District of West Virginia. Furthermore, most of the named Defendants reside in the Northern District of WV, except for Mr. Caudill, who has now been dismissed from this action. In light

of the foregoing, I **ORDER** the parties to brief me on the issue of whether this district or the Northern District of West Virginia is the most appropriate venue in which to litigate this case. Parties shall have fourteen (14) days from the entry of this order to respond if such party would oppose a *sua sponte* transfer of venue.

V. Conclusion

For the foregoing reasons, Defendant Steve Caudill's Motion to Dismiss, [ECF No. 14], and Defendant Joseph Wood's Motion to Dismiss, [ECF No. 34], are **GRANTED**. Defendants Steve Caudill and Joseph Wood are hereby **DISMISSED** from this civil action. I further **DENY as moot** Defendants Caudill and Wood's Supplemental Motion to Dismiss, [ECF No. 39], and Plaintiff's Motion to Strike the Supplemental Motion, [ECF No. 48]. All counts remain pending against the remaining Defendants. I **ORDER** the parties to submit briefs within fourteen (14) days of the entry of this order as to whether this district or the Northern District of West Virginia is the most appropriate venue in which to litigate this case if the party opposes a *sua sponte* transfer of venue. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 4, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE